**UNITED STATES of America, Appellee,**

v.

**Anton VETTER, Appellant.**

**No. 89–5317.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1990.

Decided Feb. 1, 1990.

---

Before BOWMAN, WOLLMAN and BEAM, Circuit Judges.

## PER CURIAM.

Anton Vetter appeals from his jury conviction and sentence on one count of making a false statement to an FBI agent in violation of 18 U.S.C. § 1001 (1988) and one count of bank fraud in violation of 18 U.S.C. § 1344 (1988). For reversal, Vetter challenges the sufficiency of the evidence and the admissibility of the testimony of a lay witness. Should the conviction be affirmed, he asks us to vacate the order to make restitution in the amount of $25,000 to the victim bank. We affirm the District Court.[1]

Trial testimony revealed that in 1978 Vetter obtained a loan of $120,000 from Central Dakota bank (the Bank) of Lehr, North Dakota,[2] to start a beef cattle business. The Bank took a security interest in Vetter's initial purchase of 180 stock cows. The Bank annually renewed Vetter's promissory note and occasionally made additional advances for operating expenses. In 1984 the Bank took an additional security interest in other farm property to secure the debt.

Vetter and the Bank president met to discuss the note renewal in December 1985. The president failed to request a new financing statement, but he asked Vetter if the figures from the previous year were still accurate. Vetter answered by supplying estimated figures that substantially understated his debts. The Bank failed to verify Vetter's outstanding loan balances with other lenders.

The Bank notified Vetter in December 1986 that the renewed note was due. Vetter responded by letter that he could not repay the loan because all of his cattle had become diseased and died. Accompanying his letter was a photograph showing about a dozen cattle carcasses being placed in a pit. The Bank president visited Vetter's farm the following summer and Vetter

James P. Rausch, Bismarck, N.D., for appellant.

Lynn E. Crooks, Fargo, N.D., for appellee.

1. The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota.

2. The Central Dakota Bank is a state bank insured by the Federal Deposit Insurance Corporation.

again claimed all of his cattle had died of disease. He disclaimed ownership of the cattle then grazing on his land.

The Bank hired private investigators to locate its collateral. When interviewed, Vetter stated that 400 to 500 head of cattle had died in a three-month period. He claimed a local veterinarian had examined the cattle, diagnosed a rare brain disease, and indicated nothing could be done. The veterinarian told investigators, however, that he had been to the Vetter farm only to inspect a small number of cattle killed by lightning.

The FBI interviewed Vetter in August 1988 and January 1989. Vetter maintained his story that a mysterious disease killed his cattle, but he lengthened the period over which the cattle died from three months to three years. He abandoned his claim that he had consulted a veterinarian and lowered his estimate of loss. Vetter showed the FBI agent the pit where he allegedly placed the cattle carcasses and burned them, with the family's trash, until nothing remained but ash.

An FBI agent told the jury that two trenches were dug in the pit on Vetter's farm to search for evidence substantiating Vetter's claims, but only burned trash, tin cans, and half a dozen small bones were found. No large amounts of ash or other cattle remains could be located and, in fact, the area was only four feet deep. The FBI agent also testified that his investigation revealed that, during the period the cattle allegedly were dying, Vetter transacted a number of cattle sales at area livestock markets in the names of his children. The proceeds from the sales sometimes were deposited into and quickly withdrawn from multiple checking accounts at various banks, but more often they were never deposited.

Upon conviction, the District Court sentenced Vetter to five months imprisonment, three months at a halfway house, two months house probation, and three years of supervised release. The release is conditioned upon a good faith effort to make restitution to the Bank in the amount of $25,000. 18 U.S.C. § 3663 (1988).

Vetter argues on appeal, as he did at the sentencing hearing, that the District Court could not impose restitution. In October 1987, the Bank sued Vetter on the note and received a judgment for the full amount of the outstanding loan, plus interest. The Bank repossessed and liquidated equipment and livestock located on the Vetter farm, but after applying the proceeds to Vetter's defaulted loan, there remained a deficiency of $117,000. Vetter filed a Chapter 7 bankruptcy petition in December 1987, prior to his indictment on criminal charges. In February 1988, the Bank attempted to protect the deficiency from discharge. The Vetter children threatened to sue the Bank for conversion, claiming that the Bank illegally seized and sold from the Vetter farm property owned by the children. The parties entered into a settlement agreement providing that the Bank would withdraw its claim for the balance of Vetter's debt and waive its right to sue the Vetter children for fraudulent conveyances, and the children would waive their right to sue the Bank in conversion. The bankruptcy court approved the agreement. Vetter argues that the restitution order has the effect of reinstating the debt that was discharged in bankruptcy and interferes with the private settlement contract negotiated by the parties.

Any debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit [that] is not compensation for actual pecuniary loss" is excepted from discharge in a Chapter 7 bankruptcy proceeding. 11 U.S.C. § 523(a)(7) (1988). The United States Supreme Court held that restitution ordered by a state court as part of a criminal sentence falls within section 523(a)(7) and is not subject to a discharge under Chapter 7 of the Bankruptcy Code. *Kelly v. Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 363, 93 L.Ed.2d 216 (1986). The Supreme Court reasoned that restitution resulting from criminal proceedings enforces "the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation," particularly since the victim has no control over an order of

restitution. *Id.* at 52, 53, 107 S.Ct. at 362, 363.

■ One federal circuit extended the *Kelly* rationale to include federal restitution orders, even though the court recognized that *Kelly* "was partially influenced by federalism concerns." *United States v. Caddell*, 830 F.2d 36, 39 (5th Cir.1987) (restitution order did not illegally require debtor to divert funds from Chapter 11 estate); *see also In re Wright*, 87 B.R. 1011, 1015 n. 3 (Bankr.S.D.1988) (restitution ordered by federal district court not discharged in Chapter 7 proceeding); *In re O'Connell*, 80 B.R. 475, 476 (Bankr. E.D.Mo.1987) (same). We agree that the Supreme Court's rationale in *Kelly* applies equally to restitution orders entered as part of a criminal sentence by federal and state courts. Therefore, since such restitution orders are excepted by section 523(a)(7) from discharge in Chapter 7 bankruptcy proceedings, whether the restitution was ordered before or after the bankruptcy proceeding commenced is irrelevant.

It is apparent that the District Court intended the restitution order to serve as punishment for Vetter rather than compensation for the Bank. The District Court was aware of the discharge and the agreement leading to it. The court provided that the restitution order would be cancelled at the end of the period of supervised release if, despite good faith effort, Vetter is unable to pay. The order required payment of only $25,000, while the debt discharged was $117,000. We think it clear that the District Court's goal was to punish Vetter and deter future fraudulent activity, not to see that the victim was repaid.

■ Vetter's argument that the restitution order interferes with the contractual rights of the parties to the settlement agreement was addressed by another circuit in *United States v. Cloud*, 872 F.2d 846 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). Upon Cloud's conviction of aiding and abetting bank fraud and conspiracy to commit bank fraud, the district court ordered him to make restitution to the insurance company that indemnified the defrauded bank. Like Vetter, Cloud argued that the district court could not order restitution, since contracts among Cloud, the bank, and the insurer settled all of the parties' claims. The Ninth Circuit concluded that, under *Kelly*, the district court had authority to order Cloud to pay restitution despite the settlement agreements, since neither the bank nor the insurer "had an independently enforceable right to receive restitution under the [Federal Victim and Witness Protection Act]." *Id.* at 854. In essence, the court reasoned that since there was no such right, it could not be waived in a settlement among the parties. We agree with the reasoning of *Cloud* and hold in this case that the District Court properly ordered Vetter to make restitution to the Bank.

■ Vetter also challenges the admissibility of the testimony of government witness Ken Will, one of the private investigators hired by the Bank. The District Court allowed Will to testify, over Vetter's objection as to relevance and prejudice, that he had once been involved, as a former county sheriff, in the disposition of about 180 cattle carcasses in a manner similar to that claimed by Vetter. Will explained to the jury the difficulties experienced in getting the cattle carcasses to burn in the pit and testified as to remains left after the burning process.[3]

Our review of the record leads us to conclude that the District Court did not abuse its discretion in permitting Will to testify. *See Rothgeb v. United States*, 789 F.2d 647, 650 (8th Cir.1986) (relevancy of evidence within broad discretion of trial court; *United States v. Peltier*, 585 F.2d

---

**3.** Vetter attached to his brief a copy of a report about an FBI investigation conducted after the trial in this case. The question apparently arose after the trial whether the event Ken Will testified to occurred as he stated. The FBI report indicates that others who knew of the event could not remember any attempt to burn the cattle carcasses in the pit. There is no indication in the record that the District Court has had the opportunity to review this report, although we note Vetter's stated intention to use the report as the basis for a new trial motion. Since Vetter argues only that Will's testimony was irrelevant and prejudicial and not that the government knowingly presented perjurious testimony, we do not consider the report for purposes of this appeal.

314, 321 (8th Cir.1978) (great deference given to trial judge to weigh probative value against prejudicial effect under Rule 403), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). Will's testimony was clearly relevant to the facts presented in this case. The trial judge reasonably could have thought such testimony would aid the jury and was not so prejudicial as to outweigh its probative value.

In his final argument, Vetter claims the evidence was insufficient to convict him. In evaluating the sufficiency of the evidence in a criminal trial, the evidence is viewed in the "light most favorable to the government, giving it the benefit of all reasonable inferences"; reversal is warranted "only if a reasonable jury could not have found guilt beyond a reasonable doubt." *United States v. Felix,* 867 F.2d 1068, 1071 (8th Cir.1989) (quoting *United States v. Davis,* 785 F.2d 610, 619 (8th Cir.1986)). Viewing the record in this light, we hold that the evidence was sufficient to support Vetter's convictions.

Accordingly, we affirm the District Court.