57 F.3d 667
 42 Fed. R. Evid. Serv. 744
 Jimmie L. WILLIAMS, Appellant,
v.
NEBRASKA STATE PENITENTIARY; Brad Exstrom, Unit Mgr.,
Housing Unit 4, NSP; Matt Heckman, Unit Mgr., Housing Unit
3, NSP; Lawrence Higgins, Unit Supervisor, II, Housing Unit
3, NSP; Dean Naylor, Major, Correctional Officer, Chief of
Security, NSP; Lynn Wright, Captain, Correctional Officer,
NSP, Appellees.
 No. 94-3416.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1995.
Decided June 13, 1995.
 
 Lawrence G. Whelan, Omaha, NE, for appellant.
 Terri M. Weeks, Lincoln, NE, for appellee.
 Before WOLLMAN and MURPHY, Circuit Judges, and EISELE,* Senior District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 This is a civil rights case brought under 42 U.S.C. Sec. 1983. Jimmie L. Williams asserts that Nebraska prison officials violated his Eighth Amendment rights by disregarding the risk of harm posed by a hostile cellmate who eventually assaulted him. After a five-day jury trial, a verdict was returned for the prison officials. We affirm.
 
 
 2
 * On February 5, 1991, Williams, a long-time Nebraska State Penitentiary inmate whose cellmate had just been moved out, requested that new NSP inmate Charles Hayes be moved to his cell. This request was approved the same day. Shortly after Hayes moved in, Williams began to request a transfer, complaining many times to various prison officials that he and Hayes were not getting along. Williams and another inmate testified that Williams feared that Hayes would hurt him. It is undisputed that Williams told at least one prison official that there was a possibility of violence. During this period, Williams repeatedly submitted written requests for transfer. All of Williams's entreaties failed, and on May 27, 1991, Hayes savagely beat Williams. Thereafter, Williams filed this action for damages against various prison officials.
 
 II
 
 3
 Williams objects to the district court's[1] jury instruction on the elements of an Eighth Amendment claim of deliberate indifference by prison officials toward inmates. The rule to be used in such cases is laid out in Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994): "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."
 
 
 4
 In attempting to conform with the Farmer rule, the district court here gave the following instruction:
 
 
 5
 [Williams] must prove both that:
 
 
 6
 a. the particular defendant was aware of facts from which a conclusion could be drawn that there was a substantial risk that Hayes would assault [Williams] if the cell assignment was not changed; and
 
 
 7
 b. the particular defendant actually drew the conclusion that there was a substantial risk that Hayes would assault [Williams] if the cell assignment was not changed.
 
 
 8
 Instruction No. 10. The district court's rationale for substituting "conclusion" for "inference" was its belief that the former had a plainer meaning for lay persons than the latter.
 
 
 9
 Williams argues that the district court's use of "conclusion" rather than "inference" improperly raised his burden of proof. Even if we assume that an inference is somehow less firm than a conclusion in that an inference admits of some speculation while a conclusion does not, the burden of proof here was not improperly changed. The district court added flexibility to the allegedly overly definite and hard-to-prove meaning of "conclusion" by injecting the concept of drawing conclusions. The lesson of Farmer is that to be liable, the accused prison official must have remained deliberately indifferent to an actually known risk of harm to the prisoner. --- U.S. at ----, 114 S.Ct. at 1979. For the purpose of getting this meaning across, there is no difference between the phrases "defendant was aware of the facts from which a conclusion could be drawn" and "defendant was aware of the facts from which an inference could be drawn." The same holds true for the phrases "defendant actually drew the conclusion" and "defendant actually drew the inference." The instruction is faithful to Farmer. Whether the meaning of "inference" is so far beyond the ken of jurors that it should be replaced by "conclusion" is a matter we need not pass upon.
 
 III
 
 10
 Williams next argues that the district court erred in allowing the jury to hear of his criminal and prison record. (Williams is serving a life sentence for first degree murder, and also has an earlier murder conviction.) Williams sought to exclude this evidence by a motion in limine. The district court denied this motion, with the proviso that before an aspect of Williams's record would be allowed in, the defendants had to establish that at the time Hayes was placed with Williams at least one defendant was aware of that aspect.
 
 
 11
 This ruling shows that the district court considered the criminal history to be relevant to the Farmer question whether the defendant prison officials subjectively believed Williams to be at risk. The ruling also implies that the district court believed that Williams's criminal history helped to show that he could protect himself against a potentially violent cellmate. Williams argues that his ability to protect himself is irrelevant to the issue of whether the defendants were justified in ignoring his repeated requests for a cell transfer, which were demonstrably based on Williams's fear of violence from Hayes.
 
 
 12
 We agree with the district court that Williams's record is relevant to the critical Farmer issue of the prison officials' subjective knowledge of risk to Williams: in calculating risk to a prisoner, prison officials can take into account their subjective belief as to the prisoner's ability to protect himself.
 
 
 13
 Williams next argues that even if his criminal history is relevant, its prejudicial impact substantially outweighed its probative value. But there is no automatic requirement that a district court exclude evidence which is more prejudicial than probative: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." FED.R.EV. 403 (emphasis added). This permissive language is a reminder that when reviewing a Rule 403 determination, our task is not to reweigh the prejudicial and probative elements of the evidence, but rather to determine if the district court clearly abused its discretion in admitting the evidence. Duncan v. Wells, 23 F.3d 1322, 1323-24 (8th Cir.1994); see United States v. Long, 574 F.2d 761, 767 (3rd Cir.) ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal."), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). See also United States v. Vetter, 895 F.2d 456, 459-60 (8th Cir.1990) (per curiam).
 
 
 14
 Here, in apparent recognition that Williams's case might be prejudiced by his violent record, the district court took a balanced approach: to get the evidence in, the defendants were required to show that one of them at the pertinent time knew of each aspect of Williams's record sought to be admitted. Cf. Wilson v. Groaning, 25 F.3d 581, 585 (7th Cir.1994) (district court rejected prison official's attempt to admit plaintiff's convictions because prison official did not specifically know of the convictions). The district court thereby insured that the evidence admitted was directly probative of the central issue in the case: each prison official's subjective calculation of risk to Williams, a calculus which properly took into account Williams's ability to protect himself. Accordingly, there was no abuse of discretion in admitting the criminal history evidence.
 
 
 15
 The judgment is affirmed.
 
 
 
 *
 The HONORABLE GARNETT T. EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska