RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0426P (6th Cir.)
File Name: 01a0426p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            *v.*                              No. 00-5103

JACK BEARDEN,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 99-00017—Jennifer B. Coffman, District Judge.

Argued: August 7, 2001

Decided and Filed: December 18, 2001

Before: MOORE and COLE, Circuit Judges; ROSEN,
District Judge.[*]

_____

## COUNSEL

**ARGUED:** Gary J. Sergent, O'HARA, RUBERG,
TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for
Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Gary J. Sergent, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, Wende C. Morris, ASSISTANT UNITED STATES ATTORNEY, Covington, Kentucky, for Appellee.

MOORE, J., delivered the opinion of the court. ROSEN, D. J. (p. 18), delivered a separate concurring opinion.

————————————

## OPINION

————————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Jack Bearden appeals his conviction and sentence on one count of knowingly transporting in interstate commerce stolen goods (IBM laptop computers) having a value of $5,000 or more. In this appeal, Bearden raises five issues: the district court's refusal to accept his plea of nolo contendere; the district court's refusal to grant downward departures because of Bearden's age and poor health and for acceptance of responsibility; the existence of a variance between the indictment and proof presented at trial; the credibility of a government witness; and the propriety of the district court's restitution order. For the following reasons, we **AFFIRM** Bearden's conviction and sentence.

## I. BACKGROUND

From late 1996 through May of 1997, Jack Bearden acted as a middleman, selling laptop computers stolen from the warehouse of Pomeroy Computer Resources ("Pomeroy"), located in Hebron, Kentucky, to buyers located primarily in the Cincinnati, Ohio area. James Finkenstead, an employee of Pomeroy, sold sixty-eight of the stolen laptop computers to Timothy Macke. Macke then transferred forty-eight of these computers to Jack Bearden's son, Terry Bearden ("Terry"), who agreed to divide the proceeds of the computers' sale with

---

**CONCURRENCE**

---

ROSEN, District Judge, concurring.  I fully concur in the majority's opinion in all respects, but write separately only to urge that with respect to the issue of the scope of the District Court's discretion to reject *nolo contendere* pleas under Fed. R. Crim. P. 11(b), we should join those Circuits which hold that it is within a judge's discretion to adopt a general policy against *nolo* pleas.  *See, e.g., United States v. Gratton,* 525 F.2d 1161, 1163 (7th Cir. 1975); *United States v. Dorman,* 496 F.2d 438, 440 (4th Cir. 1974).  Although I do not have such a blanket policy, it seems to me that the many sound reasons in favor of one — ranging from a judge's belief that someone who is unwilling to fully confess guilt should not be permitted to plead guilty, to the view that, by accepting a *nolo* plea, the court is placing its imprimatur upon a fiction in order to assist a criminal defendant in avoiding civil liability — lead to the conclusion that the adoption of such a general policy is itself within a court's broad discretion under Rule 11(b).  These justifications remain valid — and, hence, a court's discretionary authority is undiminished — even in those cases in which the government does not object to a *nolo* plea.

Macke.  Terry then approached his father about the computers; Bearden agreed to sell the computers and divide his proceeds with Terry.  Bearden sold forty-six stolen laptop computers during the course of this scheme.  Bearden sold the computers for approximately $2,000 to $2,500 each, although most of the computers were valued at approximately $4,000 each.  In turn, most of the computers Bearden sold were then resold over the Internet by Cincinnati-area physicians.

After an inventory of the Pomeroy warehouse indicated that computers were missing, a joint county police department-FBI investigation eventually led to Bearden and the others.  A federal grand jury in Covington, Kentucky returned an indictment on February 11, 1998, charging Bearden with interstate transportation of stolen goods.  Bearden was subsequently arrested; he pleaded not guilty before a magistrate judge.  When he was re-arraigned before the magistrate judge, Bearden sought to enter a plea of nolo contendere to the charge.  The magistrate judge recommended that the district judge accept the plea of nolo contendere.  On August 20, 1999, Bearden appeared before the district judge for sentencing.  The district judge refused to accept Bearden's nolo plea, however, stating, "I will not take a nolo plea.  You may plead guilty and I will sentence.  You may plead not guilty and we'll go to trial.  But I just don't take nolo pleas."  Joint Appendix (J.A.) at 111.  Bearden then pleaded not guilty, and the case was scheduled for trial.

Before Bearden was tried on this count, however, the federal grand jury returned a two-count superseding indictment, charging Bearden and Finkenstead with conspiracy to transport stolen property and charging Bearden alone with transportation of stolen property.  The conspiracy count against both defendants was eventually dismissed, but only after a mistrial was declared in a trial held in October 1999.  Bearden was then tried, by himself, on the transportation count (originally count two of the superseding indictment); after a two-day trial, the jury found Bearden guilty on November 10, 1999.

The sentencing hearing was held before the district judge on January 6, 2000. Bearden moved for downward departures for both his age and poor health, pursuant to U.S. Sentencing Guidelines Manual (U.S.S.G.) § 5H1.4 (1998), and his payment of restitution, in the amount of $47,000, to Pomeroy's insurance company, CNA, pursuant to U.S.S.G. § 5K2.0. The district judge rejected the downward departure for Bearden's poor health, reasoning that such a departure is "disfavored" and that Bearden's health problems could be adequately handled by the Bureau of Prisons. J.A. at 229-30. Bearden is in his late sixties and suffers from a number of health problems, including a heart condition and a frontal lobe impairment.

The basis of the downward departure under § 5K2.0 for payment of partial restitution was discussed at some length in the sentencing hearing. Bearden's counsel argued that Bearden should receive a downward departure because Bearden had paid $47,000 in restitution to CNA, Pomeroy's insurer. As a result of this payment, CNA had released Bearden from all further claims and liability for Pomeroy's losses, on January 3, 2000. Bearden's counsel argued that this payment should be considered under U.S.S.G. § 5K2.0 as a mitigating circumstance not adequately taken into consideration by the Sentencing Guidelines. The district court rejected Bearden's request for a downward departure based on this provision, however, as the payment of restitution is adequately taken into account in the adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1. The district court determined that Bearden should not receive the benefit of a departure for acceptance of responsibility because he had put the government to its proof in trying him and had only reached this settlement with CNA after his trial. Moreover, Bearden had "never admitted [to] knowing that [the computers] were stolen or even suspecting that they were stolen." J.A. at 231.

The district judge sentenced Bearden to twenty-four months' imprisonment, three years of supervised release, and a fine of $4,000 and ordered him to pay $161,590 in

jury beyond a reasonable doubt.[4] Bearden is not clear, however, which "statutory maximum" he contends was exceeded by the restitution order. Section 3663A(b)(1)(B) of Title 18 authorizes the district court to impose a restitution order for "an amount equal to the greater of the value of the property on the date of . . . loss . . . or the value of the property on the date of sentencing." *See also* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the *full amount of each victim's losses as determined by the court* . . . .") (emphasis added). Bearden was ordered to pay restitution in an amount equal to the value of the stolen laptop computers, as calculated by the district court. This figure thus does not exceed the "statutory maximum" found in the restitution statutes. *Accord United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (holding that § 3663A "is in this respect like a statute that permits the judge to impose any term of years up to life in prison" and thus is not governed by *Apprendi*). Moreover, Bearden was potentially subject to fine of up to $250,000, pursuant to 18 U.S.C. § 3571. His actual fine was set at $4,000. *See* J.A. at 42 (Judgment). Thus, even if the restitution order were to be considered as a fine for the specific offense of which Bearden was convicted, the restitution imposed did not exceed the relevant statutory maximum.

### III. CONCLUSION

For the foregoing reasons, Bearden's conviction and sentence are **AFFIRMED**.

---

[4] Coincidentally, the Seventh Circuit recently rejected a similar argument by holding that restitution is not in fact a "penalty for a crime" but rather a civil remedy imposed simultaneously with the criminal penalty. *See United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000). Such reasoning is clearly at odds with the case law in other circuits that holds that restitution is, at least in part, punishment.

not, however, excessive given the facts before the sentencing court. Instead, the district court in the present case followed the procedures of 18 U.S.C. § 3664(e), resolving the dispute over the amount of restitution by the preponderance of the evidence. During the sentencing hearing, the district court laid out its reasoning:

> Paragraph 26 [of the pre-sentence report] lists the amount of $161,590. That is based on 46 computers, 37 of which were valued at $4,081, nine of which were valued at $1,177. I have no contrary proof. And that is what I would accept. I accept that because, according to the testimony which I heard[,] Doctor Bukhari sold 37 of the computers — bought 37, Doctor Barrere one, Doctor Lorenc two, Mr. Crawford five or six and Mr. Parlato one . . . .
>
> That is a total of 46 or 47. I will take the lower of those numbers. That verifies the 46.
>
> The defendant has not disputed the math, the multiplication at least. That comes up to the $161,590. . . . And that is the amount for which the defendant . . . will be held responsible.

J.A. at 234-35. Bearden has not made any specific arguments calling into question this amount, and thus the basis of his claim of excessiveness is not clear. Without more, we cannot conclude that the district court abused its discretion in setting this amount.

Second, Bearden apparently takes issue with the § 3664(e) preponderance of the evidence standard itself. Bearden now argues that the district court's restitution order conflicts with *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), because it effectively "increases the penalty for a crime beyond the prescribed statutory maximum" without the factors used to calculate the amount of restitution having been found by a

restitution. Bearden was, however, to be given credit for the $47,000 already paid in restitution, and thus owes CNA $114,590 in restitution. Bearden has filed a timely appeal of his conviction and sentence. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742.

## II. ANALYSIS

### A. The District Court Was Within Its Discretion in Refusing to Accept Bearden's Nolo Plea.

The first question raised on appeal by Bearden is whether the district court abused its discretion in refusing to accept his nolo contendere plea. The extent of a district court's discretion in considering whether to accept a proffered plea of nolo contendere under Fed. R. Crim. P. 11(b) is an issue of first impression in this circuit. Rule 11(b) clearly indicates that a criminal defendant has no absolute right to plead nolo contendere but instead "may plead nolo contendere only with the consent of the court." The circuits that have considered this issue have generally held that a district court possesses wide discretion whether to accept a plea of nolo contendere. *See, e.g., United States v. Cepeda Penes*, 577 F.2d 754, 756 (1st Cir. 1978) ("[A]cceptance of a *nolo* plea is solely a matter of grace . . . ."); *United States v. Gratton*, 525 F.2d 1161, 1163 (7th Cir. 1975) ("[I]t seems at least arguable that the acceptance of a *nolo* plea is so broadly a matter of discretion that a judge's adoption of a policy against such a plea is itself within [the judge's] discretion."); *United States v. Dorman*, 496 F.2d 438, 440 (4th Cir. 1974) (finding "no abuse of discretion" in the district judge's general policy against nolo pleas except in tax evasion cases). *See also* Charles Alan Wright, 1A Federal Practice & Procedure § 177, at 294 (3d ed. 1999) ("[I]t is wholly unlikely that refusal to accept [a nolo contendere] plea would be regarded as error on appeal.").

Bearden argues, however, that the district court abused its discretion by rejecting his nolo plea based on a general policy against accepting such pleas. He argues that Rule 11(b) requires an individualized assessment of the merits of a

particular defendant's proffered nolo plea before a district court can reject it. The contrary position, however, is suggested by the literal language of Rule 11(b), which states, in relevant part, "[s]uch a plea *shall be accepted* by the court *only* after due consideration of the views of the parties and the interest of the public in the effective administration of justice" (emphases added). Read literally, then, the rule would appear to grant district courts an absolute — even arbitrary — right to reject nolo pleas but only a limited discretion to accept them.

We reject this interpretation of Rule 11(b) because we are reluctant to conclude that there is no possible set of circumstances in which a district court would abuse its discretion in refusing to accept a nolo plea based on a general policy. We conclude, however, that the present case does not present such a set of circumstances. Bearden has not offered a compelling reason for his offer to plead nolo contendere rather than guilty, other than his implausible claim that he did not know that the laptop computers at issue in the case were stolen. A different conclusion might be required where the defendant could show a more compelling reason for pleading nolo contendere, but we leave that possibility for another day. Moreover, the government objected to the proffered nolo plea in the present case, and the district court would have been within its discretion had it rejected Bearden's nolo plea on that basis. *See United States v. David E. Thompson, Inc.*, 621 F.2d 1147, 1150 (1st Cir. 1980) ("We know of no case in which an appeals court reversed a district court's refusal to accept a plea of *nolo* not supported by the prosecution."). In these circumstances, the district court did not abuse its discretion in refusing to accept Bearden's proffered nolo plea.

Bearden has also raised a double jeopardy issue with respect to his rejected nolo contendere plea. As described *supra*, the district court in this case delegated the responsibility for initially taking Bearden's plea to the magistrate judge under 28 U.S.C. § 636(b)(3). The magistrate judge accepted Bearden's nolo contendere plea during the second arraignment, and, as a result, Bearden argues that

rather than compensatory in nature. "Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution." *Id.* at 52. *See also, e.g., Sheinbaum*, 136 F.3d at 448. Thus, private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers. "Private parties cannot simply agree to waive the application of a criminal statute. . . . [T]he law will not tolerate privately negotiated end runs around the criminal justice system." *Savoie*, 985 F.2d at 619 (citations omitted).

We now adopt the rule that a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong. In this case, Bearden would have his payment of $47,000 erase the rest of the $161,590 restitution imposed. As the Supreme Court indicated in *Kelly*, the purposes of criminal restitution include punishment. It would be improper to permit private parties to release criminal wrongdoers from punishment. Thus, under our holding today Bearden still owes CNA $114,590 in restitution.

Moreover, to permit criminal wrongdoers to seek settlements with their victims would unfairly advantage wrongdoers with means over their less affluent counterparts. In this case, for example, Bearden was able to raise the $47,000 that he paid in settlement to CNA through a loan secured by his house. Through raising these funds, Bearden proposes to escape paying the remainder of the restitution amount, an important aspect of his sentence. A less affluent wrongdoer, on the other hand, would suffer the full brunt of court-ordered restitution.

In passing, Bearden raises two other issues regarding the restitution order. First, Bearden asserts that the restitution order was excessive. The district court's restitution order was

by CNA precluded the district court from ordering criminal restitution. We have not previously decided whether a settlement or release executed by the victim of a crime prevents a sentencing court from ordering restitution. The other circuits, however, have generally held that "a release by the victim does not preclude or cap restitution of losses as part of criminal sentencing in a case where there is no double recovery." *United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998) (citing *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993)); *see also United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998) (concluding "that district courts possess the discretion to impose restitution orders in spite of civil settlements" because of "the rehabilitative and retributive functions" of restitution), *cert. denied*, 526 U.S. 1133 (1999); *United States v. Vetter*, 895 F.2d 456, 459 (8th Cir. 1990) (holding that a district court may order restitution despite a settlement agreement); *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989) (holding that the dismissal of a civil action in state court does not preclude a restitution order on the same claim); *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir.) ("[D]espite the existence of settlement agreements among the parties, the district court was authorized . . . to order Cloud to pay restitution to the insurance company in this case."), *cert. denied*, 493 U.S. 1002 (1989).

The courts that have reached this conclusion cite *Kelly v. Robinson*, 479 U.S. 36 (1986), for the general proposition that restitution ordered as part of a criminal sentence is punitive

---

§§ 3663 and 3663A. U.S.S.G. § 5E1.1(a)(1). It is not clear whether the district court relied upon § 3663 or § 3663A in imposing restitution, but we note in passing that restitution was properly ordered, in the full amount of the loss, pursuant to the latter provision. The conduct at issue in this case took place after the effective date of the Mandatory Victims Restitution Act ("MVRA") of 1996, Pub. L. No. 104-132, § 211, 110 Stat. 1227 (1996), April 24, 1996, and thus mandatory restitution was required for this "offense against property." *See* § 3663A(c)(1)(A)(ii); *see also Vandeberg*, 201 F.3d at 812 (noting that defendant, convicted of interstate transportation of stolen goods, was properly sentenced under the MVRA).

jeopardy attached at that point. Thus, he argues, the government was precluded from later trying him on the same charge.

This argument is based on the proposition that jeopardy generally attaches when *the district court* accepts a guilty plea. *See United States v. Ursery*, 59 F.3d 568, 572 (6th Cir. 1995) ("[J]eopardy attaches to a guilty plea pursuant to a plea agreement upon the *court's acceptance* of the plea agreement."), *rev'd on other grounds*, 518 U.S. 267 (1996); *see also United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999) ("As a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea."). In this case, Bearden would have the magistrate judge step into the shoes of the district court for jeopardy purposes. Bearden argues in effect that the district court did not have the power to reject his nolo plea after the magistrate judge accepted it. Thus, the issue is whether the district court retained the power to review de novo Bearden's nolo plea after the magistrate judge accepted it. Because we conclude that the district court retained this ultimate power of review, we hold that jeopardy could not attach until the district court accepted the plea.

In making this double jeopardy argument, Bearden relies on *United States v. Williams*, 23 F.3d 629 (2d Cir.), *cert. denied*, 513 U.S. 1045 (1994), but *Williams* actually cuts against his position. In *Williams*, the Second Circuit considered the statutory and constitutional issues presented by the delegation of plea hearings to magistrate judges. The *Williams* court concluded that a plea hearing may be delegated to a magistrate judge without statutory or constitutional difficulties as long as the defendant consents to the delegation. In this context, we note that Bearden consented to the delegation in the present case. The *Williams* court reasoned that delegation of this responsibility did not implicate Article III concerns "[b]ecause the district court remains in control of the proceeding, and the matter is reported to that court for its approval." *Id.* at 634. *See also United States v. Dees*, 125 F.3d 261, 268 (5th Cir. 1997)

("The taking of a plea by a magistrate judge does not bind the district court to accept that plea. Rather, the district court retains ultimate control over the plea proceedings, which are submitted to the court for its approval. Moreover, district courts review plea proceedings on a *de novo* basis . . . .") (citation omitted), *cert. denied*, 522 U.S. 1152 (1998).[1]

Bearden argues, however, that the limitation on the defendant's ability to withdraw his guilty plea, after acceptance of the plea by a magistrate judge, indicates that jeopardy in fact attaches when the magistrate judge accepts the plea. In *Williams*, for example, the defendant sought to withdraw his plea of guilty, which had previously been accepted by the magistrate judge, before the district judge accepted the plea at the defendant's sentencing hearing. The district court refused to allow the defendant to withdraw the plea. In considering this issue on appeal, the Second Circuit reasoned that "[a] defendant has no absolute right to withdraw his plea of guilty." *Williams*, 23 F.3d at 634. Instead, relying on Fed. R. Crim. P. 32(e), the Second Circuit stated that a defendant must show a "fair and just reason" for the withdrawal. The reason offered was that Williams had discovered, after pleading guilty, that he had a possible entrapment defense. The district court refused to accept that as grounds for permitting, as a matter of its discretion, the withdrawal of the guilty plea because the entrapment defense was foreclosed by the facts of the case. *Id.* at 635. The Second Circuit affirmed, holding that the district court had not abused its discretion in denying the defendant's motion to withdraw his guilty plea. *Id. Accord United States v. Mader*, 251 F.3d 1099, 1104 (6th Cir. 2001) (holding that a criminal defendant "must provide a fair and just reason to support

---

[1] *Accord Peretz v. United States*, 501 U.S. 923, 937 (1991) (holding that voir dire of jury may be delegated to magistrate judge where defendant consents to the delegation because the district court retains the ultimate decision on empaneling the jury); *Gomez v. United States*, 490 U.S. 858, 875-76 (1989) (holding that district court's delegation of voir dire to magistrate judge is inconsistent with 28 U.S.C. § 636(b)(3) where defendant does not consent).

government never offered any laptop computers into evidence.

Bearden's insufficiency of the evidence argument is without merit. When the evidence is viewed in the light most favorable to the prosecution, and all inferences are drawn in the government's favor, a rational trier of fact could have found the elements of the charged offense beyond a reasonable doubt. *See United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998), *cert. denied*, 525 U.S. 1183 (1999) *and* 525 U.S. 1184 (1999). Thus, whether this claim is viewed as a variance between the indictment and proof, or as an insufficient evidence claim, we affirm the district court.

## E. The District Court's Restitution Order Was Proper, Not Excessive, and Does Not Present an *Apprendi* Problem.

CNA, Pomeroy's insurer, reached a settlement with Bearden, prior to sentencing, which released Bearden from all further liability to CNA upon his payment of $47,000 to CNA. Based on this release, Bearden now argues that the district court erred in ordering him to pay further restitution to CNA.[2] We review the propriety of ordering restitution de novo and the amount of restitution ordered for abuse of discretion. *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000).

Bearden's argument is not exactly that the district court's restitution was unlawful,[3] but rather that the release executed

---

[2] 18 U.S.C. § 3664(j)(1) states in part that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or who is obligated to provide the compensation."

[3] Restitution was proper in this case pursuant to 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1. This particular provision of the Sentencing Guidelines states that "[i]n the case of an identifiable victim, the court shall enter a restitution order for the full amount of the victim's loss, if such order is authorized under" a number of statutes, including 18 U.S.C.

**D.    There Was No Variance Between the Indictment and the Government's Proof at Trial.**

Bearden also argues that there was a fatal variance between the terms of his indictment and the government's proof at trial.    We review de novo whether there was a variance between the indictment and the proof offered at trial.    *See United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998), *cert. denied*, 526 U.S. 1093 (1999). "A variance occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (citation and internal quotation marks omitted) (alteration in *Barrow*).

The indictment in this case charged Bearden with violation of 18 U.S.C. § 2314, knowingly transporting in interstate commerce stolen goods (laptop computers, in this case) with a value of $5,000 or more. The proof offered at trial included evidence that Bearden knew that the computers in question were stolen, that Bearden transported forty-six laptop computers from Kentucky to Ohio, and that he re-sold the computers to others.  Thus, there does not appear to be any variance at all between the terms of the indictment and the proof offered at trial.  Bearden was convicted based on the testimony of the individuals from whom he bought the stolen computers and to whom he sold them.

However, Bearden claims that, because the government "failed to present a single computer by introduction . . . into evidence," "[t]here was a fatal variance between the proof . . . and the offense charged in the indictment." Appellant's Br. at 27. Bearden asserts that the government's reliance on "the testimony of representatives of Pomeroy . . . and the photographic representation of one exemplar computer" created the variance at issue. It thus appears that Bearden is really claiming that the evidence in this case was insufficient to convict him. The argument appears to be that a rational trier of fact could not conclude that Bearden was guilty of transporting stolen laptops in interstate commerce if the

withdrawal of his guilty plea, even when that plea has not yet been accepted by the district court").

Neither *Williams* nor our recent holding in *Mader*, however, addressed when jeopardy attaches in the case of a guilty or nolo contendere plea that has been offered but not yet accepted by the district court. We hold that jeopardy attaches only when the district court accepts the defendant's guilty or nolo contendere plea.  In the present case, for example, the magistrate judge could not adjudicate Bearden's guilt or finally accept his plea; only the district court could do that.  To hold that jeopardy attached when the magistrate judge accepted Bearden's plea, on the other hand, would lead to the conclusion that the district court does not, in fact, retain the ultimate decision making responsibility regarding pleas, a conclusion that would raise Article III concerns. *See Dees*, 125 F.3d at 268 (holding that district judge's power to review magistrate judge's actions prevents Article III from being undermined by such delegations); *Williams*, 23 F.3d at 634 (same).

In so holding, we give due weight to both the constitutional protections afforded criminal defendants in our system, including the Double Jeopardy Clause, and judicial economy. The Supreme Court has stated that "[t]he Double Jeopardy Clause . . . affords a defendant three basic protections." *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984).  Our holding today preserves these three basic protections intact.  First, the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal." *Id.* at 498 (quotation omitted). Bearden cannot claim that he was denied this protection because he was never acquitted of the charged offense. The dismissal of the first indictment in favor of the superseding indictment was not the equivalent of an acquittal. Second, the Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction." *Id.* (quotation omitted).   Bearden cannot argue that he was prosecuted a second time for the same offense *after conviction*. The government did "not make repeated attempts to convict" Bearden, "thereby exposing him to continued

embarrassment, anxiety, and expense." *Id.* at 498-99. Instead, Bearden was in jeopardy only once, in one ongoing prosecution that ended when he was convicted. *See Price v. Georgia*, 398 U.S. 323, 326-27 (1970) (discussing the "continuing jeopardy principle"). Third, the Double Jeopardy Clause "protects against multiple punishments for the same offense." *Johnson*, 467 U.S. at 498 (quotation omitted). Bearden, however, has been punished only once.

We thus conclude that Bearden's double-jeopardy argument is without merit because, in the final analysis, "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the [government] its right to one full and fair opportunity to convict those who have violated its laws." *Id.* at 502.

## B.    The District Court's Denial of Bearden's Motion for Downward Departures Is Not Reviewable on Appeal.

Bearden challenges the district court's denial of his motion for downward departures based on his health and payment of restitution. The record in this case, however, clearly indicates that the district court was aware of its discretion to make these departures. "We have consistently held that the decision by a district court not to depart downwards from the Guidelines is not reviewable on appeal unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Butler*, 207 F.3d 839, 843 (6th Cir. 2000). At Bearden's sentencing hearing, the district court considered the merits of granting Bearden downward departures on account of his health and his acceptance of responsibility and denied the motion. Thus, "[i]t seems clear that the district court recognized its power to depart downwards but merely exercised its discretion not to do so." *Id.* at 844. Therefore, Bearden's claim that the district court erred in not granting his motion for downward departures is not reviewable on this appeal.

## C.    Bearden's Challenge to the Credibility of Witness Macke Is Not Reviewable.

In his motion for acquittal, Bearden argued that the testimony of Macke was perjured based on inconsistencies between prior statements under oath and Macke's trial testimony. The trial court denied this motion. On appeal, Bearden argues that Macke's testimony either lacked credibility or was perjured.

We review the factual findings of the district court for clear error. *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996). However, in reviewing the denial of a criminal defendant's motion for acquittal, we are precluded from independently assessing the credibility of witnesses. *See id.* ("The appellate courts generally do not review the district court's determinations regarding witness credibility."); *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984), *cert. denied sub nom. Freeman v. United States*, 469 U.S. 1193 (1985). To do otherwise would "invade the province of the jury as the sole finder of fact in a jury trial." *Adamo*, 742 F.2d at 935.

Bearden's claim that Macke's testimony lacked credibility is thus not reviewable. Bearden's counsel cross-examined Macke and raised the issue of his plea arrangement with the government. Bearden thus attacked the credibility of Macke, but the jury nonetheless credited Macke's testimony. We may not revisit that finding. Moreover, Bearden offers no real evidence for his claim that Macke committed perjury. Bearden states (somewhat cryptically) that "[a]t the very least, the dismissal of charges against the purported thief, Finkenstead, by the government raised a presumption that Macke was not being truthful or minimizing his own role in the thefts." Appellant's Br. at 29. Without more to suggest perjured testimony, Bearden has simply failed to raise a reviewable issue.