**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 11a0808n.06

**No. 10-1589**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 02, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      **Plaintiff-Appellee,**

v.

DAVID JOSEPH OUFNAC,

      **Defendant-Appellant.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____ /

**BEFORE:**    **MERRITT, BOGGS, and CLAY, Circuit Judges.**

    **CLAY, Circuit Judge.**  Defendant David Joseph Oufnac appeals from a district court order denying his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal following his jury conviction for one count of knowingly possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

    In 2002, Defendant met Jami Gucwa McKichan ("McKichan") online.  Defendant, who lived in New Orleans, and McKichan, who lived in Bad Axe, Michigan with her young daughter, began dating.  In February 2005, McKichan moved with her daughter to New Orleans and began living with Defendant.  McKichan noticed that Defendant would spend at least four hours a day on the computer when he was not working.  When asked what he was doing, Defendant said that it was none of her business.

Sometime between February and August 2005, McKichan found an image of child pornography on Defendant's computer.[1] McKichan testified that "the computer had just one user account, and the picture was located in a folder labeled 'pictures,' which also contained pictures of [McKichan's] daughter." McKichan confronted Defendant about the image, but he stated that "he was holding that picture for evidence in another case against someone else." McKichan requested that Defendant remove the picture. He said he deleted the image, but McKichan never checked the computer to confirm that it was deleted.

In August 2005, Defendant, McKichan, and McKichan's daughter moved to Michigan, where they again lived together. Defendant brought his computer and set up three separate user accounts—one for himself, one for McKichan, and one for her daughter. The computer was placed in the master bedroom. Defendant began password-protecting his account, but eventually told McKichan his password. McKichan's brother, John Gucwa, and Gucwa's young daughter would also use the computer when they stopped by to visit.

After the move to Michigan, McKichan's and Defendant's work schedules were different, so they did not see each other often. Even when they did, Defendant was usually on the computer. McKichan again brought up the lengthy computer usage time with Defendant and asked what he was doing, and he again stated that it was none of her business.

In October 2007, McKichan found images of child pornography for the second time. These pictures included the image of Asian children that she had seen before, which Defendant had

---

[1] The image depicted Asian adults and children, younger than ten years old, engaging in sexual conduct and contact.

allegedly deleted, and "several pornographic cartoons of young children." These were located in the computer, in Defendant's password-protected user account, under the folder labeled "pictures." McKichan confronted Defendant about the images, but "[h]e laughed at her and told her it wasn't [her] business." Then, she "asked him if that really helped him get off[,] . . . he said yes."

McKichan investigated Defendant's internet history and found that he frequently viewed a site called "daddyincest.com," in addition to other sites. The search term history included phrases such as "y + girl + 6 years + blowing + father." She asked Defendant about this internet activity, and again he told her that it was none of her business. McKichan also found an unlabeled CD with "files and files and files and files of child pornography." After confronting Defendant, he agreed to destroy it. Defendant showed her a broken CD in the trash and alleged that it was that CD.

McKichan ended the relationship with Defendant, but she continued to live with him. Defendant changed his user account password so that McKichan could no longer access his account, but he sometimes forgot to log off and his account remained open for use by anyone. McKichan could access the account at these times, as could her daughter, brother, and niece, because they used whatever account was left open. John Gucwa, testifying for the defense, stated that he never viewed child pornography on Defendant's computer.

In June 2008, McKichan began dating Jeff Gillig, who was a Michigan child protective services worker. She informed Gillig about the child pornography on Defendant's computer. Gillig reported it to the Department of Health and Human Services and encouraged McKichan to report it to the police, which she did.

McKichan met with Bad Axe City Police Department Detective Kevin Knoblock. Detective Knoblock interviewed her and her daughter, obtained a search warrant, and went to Defendant's apartment along with Police Lieutenant David Rothe and another officer. The officers gained a key to the apartment, knocked and announced themselves, and entered when there was no response. Defendant was on his way to the door when the officers entered. The officers explained their purpose and showed their search warrant, and Defendant let out a sigh. He was read his *Miranda* rights and questioned.

Detective Knoblock asked Defendant whether there were images of child pornography in his computer. Defendant first responded that "there might be," but after the question was repeated, he admitted that there were such images. Defendant also admitted that he owned the computer. Detective Knoblock asked when Defendant had last viewed child pornography, to which Defendant replied "a couple of days ago." Defendant then qualified his statement by alleging that the pictures were fake. Defendant requested an attorney, and questioning stopped. Later, however, Defendant expressed to the officers that he was upset that McKichan had reported the pornography to the police. He stated that she knew about the pornography on the computer and on a CD. He also acknowledged that a New Orleans acquaintance of his knew about the child pornography on his computer.[2]

The officers searched Defendant's apartment and confiscated the computer, over ninety CDs and DVDs, and a disposable camera. Two CDs were labeled with the title "Baby Face." Later, the computer and CDs underwent a forensic examination, which revealed about ninety pictures and five

___

[2] Defendant's computer was previously confiscated in Louisiana for suspicion of possessing child pornography, but it was later returned to him. Defendant was not charged.

videos of child pornography. These images and videos were found in Defendant's password-protected user account, in the "My Documents" folder, and an "adult writing" subfolder. Their creation dates were July 2006, December 2007, and early 2008. The "Baby Face" CDs were created in 1999 and contained over one thousand images of child pornography (some of which were the same images as those on the computer). Some of the titles of the images in these CDs had names that identified that they were child pornography. There was no internet history or search term history showing visits to child pornography websites. No fingerprinting or handwriting analysis was performed on the media seized.

On March 25, 2009, a federal grand jury indicted Defendant on one count of knowing possession of child pornography shipped or transported interstate, in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of criminal forfeiture of property used to promote the commission of the offense, in violation of 18 U.S.C. § 2253(a).

The government presented the testimony of four witnesses—Detective Knoblock, Detective Brian Pitt, Police Lieutenant David Rothe, and McKichan—and offered thirty-six exhibits into evidence. Defendant offered four witnesses—Joseph Chauvin, Jeff Gillig, John Gucwa, Jr., and Detective Knoblock (again)—and offered three exhibits. Defendant did not testify.

On January 13, 2010, the jury convicted Defendant of knowing possession of child pornography. Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court orally denied the motion and entered Defendant's conviction. Defendant timely appealed.

## DISCUSSION

This Court reviews *de novo* a district court's denial of a motion for a judgment of acquittal for insufficient evidence.[3] *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). "[A] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)) (internal quotation marks omitted). "The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007). The Court "reviews the evidence in a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony." *Id.*; *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

### A.    Section 2252A(a)(5)(B)

Section 2252A of Title 18 of the United States Code punishes knowing possession of child pornography. The statute provides, in relevant part:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be  punished . . . .

---

[3] Under Rule 29, the trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

18 U.S.C. § 2252A(a)(5)(B). The government thus has the burden to prove Defendant's (1) knowing possession, (2) of an image of child pornography, (3) that has been transported interstate.

At trial, Defendant stipulated that his computer hard drive and several CDs contained images of child pornography and that the images were shipped and transported interstate. The only disputed issue is whether Defendant "knowingly possessed" the child pornography.

## B.      Sufficiency of the Evidence

Defendant's primary challenge to his conviction is that the evidence cannot be sufficient to prove that he, and not others, knowingly possessed the child pornography images found on his computer and the CDs. Specifically, he argues that there were at least four other people who had access to his computer user account at some point—McKichan, her young daughter, her brother, and her young niece.

The Tenth Circuit has examined a similar argument where a defendant was charged with knowing possession of child pornography images found on his computer. *See United States v. Schene*, 543 F.3d 627 (10th Cir. 2008). The defendant argued that he and his wife both had access to the computer and that images were found under both of their user accounts, so the government could not prove that he, and not his wife, knowingly possessed the images. *Id.* at 639. The court found that the "collection of evidence" viewed *in toto* could show that the defendant, and not his wife, was the possessor. *Id.* at 640. Because there was evidence that the images were downloaded from defendant's online username, the evidence taken as a whole showed which of the users was the possessor of child pornography. *Id.* The mere fact that there were two people with access to the

computer and that the images were in both of their user accounts did not preclude the government from proving beyond a reasonable doubt that defendant was guilty. *See id.*

We agree that the presence of multiple computer users does not preclude a finding that only one of the computer users knowingly possessed the child pornography computer images. In this case, there was ample other evidence for the jury to conclude that Defendant, and not the other computer users, placed the images on the computer and CDs. First and most importantly, Defendant admitted to both Detective Knoblock and McKichan that he owned and recently viewed child pornography. Second, the images were all located in his personal "My Documents" file within Defendant's password-protected user account on his computer. Third, there were over a thousand images on his computer and CDs, making it unlikely that he could have overlooked their existence. Finally, the images and videos were labeled in a way that acknowledge their nature as child pornography. This evidence is discussed below, in turn.

### 1.     Defendant's Admissions

The Sixth Circuit and the Eleventh Circuit have examined convictions for knowing possession of child pornography and have found that admission of guilt is sufficient evidence to sustain the convictions. *United States v. Mellies*, 329 F. App'x 592, 607 (6th Cir. 2009); *United States v. Shiver*, 305 F. App'x 640, 643 (11th Cir. 2008). In *Mellies*, this Court found that an indirect admission of guilt was strong evidence of guilt. 329 F. App'x at 607. In *Shiver*, the defendant admitted to police that he once possessed a small amount of child pornography but had gotten rid of it, and the court found that this was substantial evidence of his guilt. 305 F. App'x at 643.

Here, the government offered uncontroverted testimony that Defendant freely and directly admitted to Detective Knoblock that he had child pornography on his computer and had viewed it within the last few days, although he later qualified his admission by stating that the pictures were fake. There was testimony that, when McKichan confronted Defendant about finding images of real child pornography on his computer and on a CD, he admitted that seeing the images aroused him. Other times where McKichan confronted Defendant with owning "child pornography" or "kiddie porn," he stated that it was none of her business or agreed to destroy the images. A jury could infer that the statements to McKichan were an implicit admission of Defendant's possession of child pornography, since he did not deny having it when confronted and he exercised control over it. Thus, Defendant explicitly and implicitly confessed to two individuals that he knowingly possessed child pornography.

### 2.    Image Location and Number of Images

Where images of child pornography exist on one's personal computer or in one's personal files, the jury may infer that the individual knowingly possessed the images. Moreover, the sheer number of images in a personal computer may be enough to imply that the computer owner knew of the existence of the images. In *Mellies*, we concluded that the fact that the defendant was the primary user of his computer, which contained thousands of child pornography images, was enough to sustain his conviction for possession of child pornography. *Mellies*, 329 F. App'x at 607. Decisions of our sister circuits have also upheld convictions of possession of child pornography where the images were located in the defendant's personal files within a computer or where there were a significant number of images. *See United States v. Burgess*, 576 F.3d 1078, 1100–01 (10th

Cir. 2009) (thousands of images on hard drive, including in files that contained defendant's other documents); *Schene*, 543 F.3d at 639–40 (10th Cir. 2008) (defendant and his wife both had access to computer, though most images were saved in defendant's user account and his files); *United States v. Irving*, 452 F.3d 110, 122 (2d Cir. 2006) (defendant had seventy-six images in his computer, located in his "My Documents" file).

Officers found ninety-six images and videos in Defendant's home computer, in the "My Documents" folder of his password-protected user account. A reasonable juror could conclude that the location of the images in Defendant's personal files and the number of images make it likely that he either saved them there himself or at least knew of and permitted their continued existence. Furthermore, over one thousand images of child pornography were located on Defendant's CDs. The CDs were created before the other four individuals even knew Defendant. The sheer number of images on Defendant's CDs and their creation dates support Defendant's conviction for child pornography possession.

### 3. Image Titles Suggesting Nature of their Contents

Where the labels or titles of images suggest their nature as child pornography, the jury may infer that an individual who possessed those images did so knowingly. *United States v. Payne*, 341 F.3d 393, 403–04 (5th Cir. 2003) (image titles plus admission of viewing images were sufficient evidence to uphold conviction for knowing possession of child pornography). The titles of many of the images in Defendant's computer and on his CDs, such as "Babyface," "LilSis06," "1-06 facial,"

and "youngfuck," contained words indicating that they contained child pornography.[4] The images' titles support the inference that Defendant knew that the images in his possession were child pornography.

### 4. The Collection of Evidence Supports Defendant's Conviction

In sum, Defendant admitted to a detective that his computer contained fake child pornography and that he recently viewed it. He admitted possessing real child pornography to McKichan. Images of real child pornography were located in Defendant's computer, in his password-protected account, in his personal files. Thousands of images were also contained within Defendant's CDs. The titles of the images indicated that they were child pornography. Although other individuals may have had access to Defendant's computer at times, the evidence of Defendant's guilt is overwhelming and thus is clearly sufficient for any rational trier of fact to have found, beyond a reasonable doubt, that Defendant knowingly possessed child pornography.

### C. Witness Credibility

Defendant also claims that there was insufficient evidence to convict him, because McKichan was not a credible witness.

It is well settled that a defendant may not appeal his conviction for insufficiency of the evidence based on a witness's lack of credibility. "We may not rule on a challenge to witness credibility in reviewing the denial of a motion for acquittal because doing so 'would invade the province of the jury as the sole finder of fact in a jury trial.'" *Graham*, 622 F.3d at 449 (quoting

---

[4] McKichan also testified that Defendant's internet search history revealed search terms or websites including "DaddyIncest," "04FuckDaddy," "Aim at the Target Daddy," "Fuck me Grandad," "Boy Mom," and "y + girl + 6 years + blowing + father."

*United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001)). Furthermore, "[a] defendant's attempt to attack witness credibility 'simpl[y] challenges . . . the quality of the government's evidence and not the sufficiency of the evidence.'" *Id.* (quoting *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)).

Because Defendant challenges McKichan's testimony for lack of credibility, which this court may not review, Defendant cannot succeed on his sufficiency-of-the-evidence claim on this basis.

## CONCLUSION

For the reasons discussed above, this Court **AFFIRMS** the district court order denying Defendant's motion for judgment of acquittal.